**JEREMY RONAN, Petitioner**

**v.**

**MONICA ABIGAIL CLARKE, Respondent**

Family No. ST-15-MS-014

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

July 17, 2015

JOSEPH B. CAINES, ESQ., St. Thomas, USVI, *For the Petitioner*.

MONICA ABIGAIL CLARKE, Woodbridge, VA, *Pro se*.

WATLINGTON, *Judge*

## AMENDED MEMORANDUM OPINION[1]

(July 17, 2015)

This matter came on for an emergency hearing on Thursday, July 2, 2015 before the Honorable Debra S. Watlington, Judge of the Superior Court of the Virgin Islands pursuant to Petitioner's Motion for Emergency Petition for Order Invalidating Alleged Durable Power of Attorney and Order Granting Petitioner Custody and Control of Decedent's Remains for Disposition, filed on July 2, 2015. The Petitioner Jeremy Ronan appeared with counsel Joseph B. Caines, Esq. The Respondent Monica Abigail Clarke appeared *pro se*.[2] Petitioner requests that the Court invalidate the Durable Power of Attorney and grant the Petitioner custody and control of the Decedent, Julien Jimeto Ronan's remains. The Court heard sworn testimony from the Petitioner Jeremy Joel Ronan and his witness Jonelle Monee Ronan. The Court also heard sworn testimony from Respondent Monica Clarke and her witness Marva Idona Clarke-Howard.

---

[1] Further analysis has been added to account for the reinstatement of the Durable Power of Attorney Act in the Virgin Islands Code and other technical corrections that do not change the decision.

[2] The Court made every effort to mediate the dispute prior to commencing a hearing.

The Decedent Julien Jimeto Ronan died in the early morning of June 19, 2015. The Petitioner Jeremy Ronan, the Decedent's son, seeks to enjoin Monica Clarke, Decedent's niece, from making any further decisions regarding the funeral and burial arrangements of his father. Jeremy Ronan seeks to hold the funeral on July 11, 2015 as opposed to the scheduled date of July 6, 2015. He alleges that Ms. Clarke used the Durable Power of Attorney of the Decedent, Julien Jimeto Ronan, to exercise control over the planning of his funeral.[3] He argued, through counsel, that the U.S. Virgin Islands does not have a law recognizing the Durable Power of Attorney and therefore the document is invalid.[4]

Ms. Clarke contends that the Durable Power of Attorney is valid and although the document terminated at the Decedent's death, a provision at the end of the document allows her to handle the burial. She contends that it was her uncle's desire to be buried as soon after death as possible, that he trusted her to carry out his wishes and that she insisted on an earlier date to honor the wishes of the Decedent. She further contends that she compromised with Jeremy Ronan in deciding on July 6, 2015 for the funeral and made accommodations pursuant to his requests.

### RELEVANT FACTS

1. The Decedent Julien Jimeto Ronan died on June 19, 2015, in Estate Mariendahl, St. Thomas, Virgin Islands.

2. Decedent was unmarried at his death, but is survived by his five children: Keishawn Ronan, J'Moy Powell, Jeremy Ronan, Jonelle Ronan and J'Nique Ronan.

---

[3] The Petitioner attached a copy of the Durable Power of Attorney, executed on May 30, 2012, to the Emergency Petition as Exhibit A. Petitioner's counsel had the opportunity to review the original Durable Power of Attorney. The document was not entered into evidence.

[4] The Court notes here that the Petitioner's argument is understandable considering that Title 15 of the Virgin Islands Code has not been updated to put counsel on notice that the Uniform Durable Power of Attorney Act, Title 15 V.I.C. §§ 1261-67 was reenacted on August 28, 2012 pursuant to the Section 2 of Act No. 7356. Title 15 of the Virgin Islands Code has been incomplete since 2012, notwithstanding publication of subsequent Cumulative Pocket Supplements in 2013 and 2014. The Court finds that these inconsistencies in the Virgin Islands Code interfere with the administration of justice and require the immediate oversight and attention of the "Code Revisor." The legal community and the Court justifiably rely on the Virgin Islands Code and there is nothing in the current version that suggests that the Durable Power of Attorney exists. This matter needs to be corrected expeditiously.

3. The Decedent was employed at Transportation Services, a ferry company, for approximately thirty (30) years.

4. There is no dispute that on May 30, 2012, the Decedent Julien Jimeto Ronan executed a Durable Power of Attorney, appointing Monica Abigail Clarke as his Attorney in Fact.

5. The Durable Power of Attorney provides that it should continue effective until Julien Jimeto Ronan's death, except that his Agent or Successor Agent shall be entitled to handle affairs relative to Julien Jimeto Ronan's burial.

6. There were no allegations of duress, undue influence, or fraud raised during the hearing.

7. There was no evidence that the Respondent Monica Clarke and Decedent Julien Jimeto Ronan's relationship was strained. Instead, it was acknowledged that they had a very close relationship.

8. There was no evidence that the Respondent Monica Clarke scheduled the funeral for a date that was convenient for her.

9. The parties agreed to the date of July 6, 2015 for Decedent's funeral, but disputed which funeral home would arrange the funeral.

10. Petitioner Jeremy Ronan desires to dress his deceased father and Respondent Monica Clarke agreed and obtained permission from Turnbull's Funeral Home to allow him to do so.

11. Respondent Monica Clarke testified that the Decedent's employer, Transportation Services, is available to sail the Decedent's body around Hassel Island as she was informed on July 2, 2015.

12. There is no evidence that the Respondent Monica Clarke is acting in a manner contrary to the wishes of the Decedent Julien Jimeto Ronan or diminishing his estate and wasting limited resources.

13. Respondent Monica Clarke testified that she will assume all funeral costs, estimated at approximately twelve thousand dollars ($12,000).

14. Clearly, as the son of the Decedent, a student of mortuary science and as an employee of a competing funeral home, Petitioner has an interest in being intricately involved in his father's funeral and the court is sensitive to his concerns.

15. However, there is no evidence that the Respondent Monica Clarke's planning of the funeral is inconsistent with the Decedent's wishes.

## ANALYSIS

The Petitioner argues that the Durable Power of Attorney, executed by the Decedent and two witnesses on May 30, 2012 in St. John is invalid after the death of the principal and that the Petitioner, as the Decedent's son, has the right to control the disposition of the Decedent's remains.

## I. BANKS ANALYSIS

■ In order to determine whether the Durable Power of Attorney is effective after the death of the principal, the rule must be analyzed in the context of the substantive law governing agency and intestate succession. The Supreme Court of the Virgin Islands has not explicitly conducted a *Banks* analysis to adopt a common law doctrine that provides for the disposition of a principal pursuant to their durable power of attorney. As established in *Banks* and subsequent cases, when confronted with an issue of Virgin Islands common law that [the Supreme Court] has not resolved . . . courts must "engage in a three-factor analysis: first examining which common law rule Virgin Islands courts have applied in the past; next identifying the rule adopted by a majority of courts of other jurisdictions; and then finally — but most importantly — determining which common law rule is soundest for the Virgin Islands." *Better Blds. Maint. of the V.I., Inc. v. Lee,* 60 V.I. 740, 757 (2014) (citing *Gov't of the V.I. v. Connor,* 60 V.I. 597, 603 (2014)); *see Banks v. Int'l Rental & Leasing Corp.,* 55 V.I. 967, 981-84 (2011).

■ The Virgin Islands has adopted the Uniform Durable Power of Attorney Act through Title 15 V.I.C. §§ 1261-67. Title 15 V.I.C. § 1262 provides, "[a] durable power of attorney is a power of attorney by which a principal designates another his attorney in fact in writing" and "the authority conferred shall be exercisable notwithstanding the principal's subsequent disability or incapacity, and, unless it **states a time of termination**, notwithstanding the lapse of time since the execution of the instrument." (emphasis added) 15 V.I.C. § 1262. The statute appears to allow the parties to state a time for the termination of the Durable Power of Attorney.

In *Fredella,* the Territorial Court of the Virgin Islands found that after a person is considered medically and legally dead, any evidence of that person's intentions concerning life support systems should be taken into consideration. *Fredella by Titchener v. Farrelly,* 28 V.I. 90 (V.I. Terr. Ct.

99

1993). "A living will is an advance directive by a competent person which expresses a wish not to receive certain artificial means of support in the event that he or she is later unable to make such a wish known in the future due to medical incapacity. Such a procedure is recognized in the Virgin Islands by the enactment of the Uniform Durable Power of Attorney Act." *Id.*

▮ It is important for the Court to consider the Legislature's intent for adopting the Uniform Power of Attorney Act. In the absence of legislative history for this Court to consider the Legislature's intent, this Court must look to the actions of the Legislature to discern its intent regarding the establishment of an agency relationship between the Decedent and his agent for the disposition of his remains. The Virgin Islands has a statute that allows a person to identify an agent who can make an anatomical gift of the principal's body or part after the principal is deceased. Pursuant to Title 19 V.I.C. § 409(a), "an anatomical gift of a decedent's body or part for purposes of transplantation, therapy, research, or education may be made, in order of priority listed . . ." 19 V.I.C. § 409(a). First priority is given to "an agent of the decedent at the time of death who could have made an anatomical gift under Section 404(2) immediately before the decedent's death." 19 V.I.C. § 409(a)(1). Second priority is given to the spouse of the decedent and third priority is given to adult children of the decedent. 19 V.I.C. § 409(a)(2)-(3). Moreover, Title 19 V.I.C. § 405(a)(3) provides that "a donor may make an anatomical gift . . . during a terminal illness or injury of the donor, by any form of communication addressed to at least two other individuals who are at least 18 years of age, one of whom is a disinterested witness. 19 V.I.C. § 405(a)(3). Clearly, if the Legislature allows for parties to establish an agency relationship to make an anatomical gift of a decedent's body part, parties can enter into an agency relationship for the disposition of the remains.

The Virgin Islands Code provides that the Uniform Durable Power of Attorney Act "shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states and territories enacting it." 15 V.I.C. § 267.

An examination of how other jurisdictions have resolved this issue, reveals that the majority of jurisdictions allow a principal to appoint an agent to decide the disposition of the principal's remains after his or her death. California Health and Safety Code § 7100 provides the order of succession of the "right to control the disposition of the remains of a

deceased person, the location and conditions of interment, and arrangements for funeral goods and services to be provided." CAL. HEALTH & SAF. CODE § 7100. The first priority is given to "an agent under a power of attorney for health care who has the right and duty of disposition." *Id.* Second priority is given to the competent surviving spouse and third to the "sole surviving competent adult child of the decedent, or if there is more than one competent adult child of the decedent, the majority of the surviving competent adult children." *Id.*

New York Public Health Law § 4201 "identifies, in descending priority, those persons who shall have the right to decide the disposition of a decedent's remains. Highest priority is given to the person designated in a written instrument executed by the decedent, duly witnessed, and accepted by the designee in a form substantially similar to the template set forth in the statute." *Lewis v. Lloyd*, 40 Misc. 3d 1223(A), 975 N.Y.S.2d 710 (App. Div. 2013). "Prior to the passage of Public Health Law § 4201, which was prompted by the events of September 11, 2001 and its aftermath, the right to dispose of deceased persons' remains was established and governed — and to a great extent still is — by a complex of common law, statutes, and regulations, including the common-law right of sepulcher." *Id.* "New York jurisprudence has long recognized the interest of decedent's next of kin in the remains of their decedent, and infringement of that interest repeatedly has been acknowledged to be actionable." *Id.*

Missouri Statute Title 12 MO.R.S. § 194.119 defines the "right of sepulcher" as the "right to choose and control the burial, cremation, or other final disposition of a dead human body."[5] Section 194.119.3 provides that "the next-of-kin of the deceased shall be entitled to control the final disposition of the remains of any dead human being. Section 194.119.2 defines next of kin by providing a hierarchical list of persons entitled to exercise the right of sepulcher in all cases relating to the custody, control, and disposition of deceased human remains. **At the top of that list is an attorney in fact designated in a durable power of attorney wherein the deceased specifically granted the right of sepulcher over his or her body to such attorney in fact.** Surviving

---

[5] The Territorial Court of the Virgin Islands has recognized that the right of sepulcher exists, and this Court finds that it is a law that is worthy of Legislative action. *See In re Estate of Ledee*, 37 V.I. 37, 44 (V.I. Terr. Ct. 1997).

children of the deceased are further down the list. Thus, if a power of attorney effectively grants the right of sepulcher to an attorney in fact designated in a valid durable power of attorney, the attorney in fact is considered the next-of-kin and has priority in exercising those rights." *Ridley-McKinney v. Shoemaker*, 405 S.W.3d 602, 605 (Mo. 2013) (emphasis added).

While our Legislature has not specifically promulgated a statute for the right to disposition of a decedent's remains, as explained above, it has expressly provided a statute for the manner of making an anatomical gift before the donor's death. Indeed, this Court can discern no reason why the Legislature would intend to allow a person to designate someone to carry out their wishes to make an anatomical gift, but not for the disposition of their body. This Court believes that the task of determining the process for appointing an agent to carry out a person's wishes for the disposition of their body is best left for the Legislature.[6]

In the absence of statutory or local law, this Court finds that the best rule for the Virgin Islands is to consider whether an agency relationship was established between the Decedent and Ms. Clarke for the disposition of the Decedent's remains. The Decedent and Ms. Clarke signed a Durable Power of Attorney on May 30, 2012 in St. John, U.S. Virgin Islands. The Petitioner acknowledges that the document exists and does not allege any fraud, duress, or undue influence when the document was created. Contrary to the petition, the Court does not find any evidence of a riff in the relationship between the Decedent and Ms. Clarke.

The parties agreed that the Petitioner can dress the Decedent for the funeral and that the funeral can include the sailing of the Decedent's body by his former employer, Transportation Services. The parties agreed on the date of the funeral but not to the use of the funeral home. However, the parties agreed that the Decedent expressed his desire to be buried as soon as possible after his death. Moreover, Ms. Clarke testified that she is assuming all burial costs to carry out her uncle's wishes. Based on the Decedent's expressed wishes, as evidenced in his Durable Power of Attorney and the sworn witness testimony, the Court finds that the funeral

---

[6] In *Fredella*, the Territorial Court of the Virgin Islands recommended that the Legislature provide the Court with direction for end of life decisions, finding that "the Legislature is the most appropriate forum for resolving issues relating to termination of life support systems for incompetent persons." *Fredella by Titchener v. Farrelly*, 28 V.I. 90 (V.I. Terr. Ct. 1993).

should proceed as it has been arranged by Ms. Clarke at Turnbull Funeral Home on July 5, 2015 and July 6, 2015.

## CONCLUSION

■ After conducting a *Banks* analysis, this Court finds that the Durable Power of Attorney Act does not prohibit a party from entering into an agency relationship for the disposition of the principal's remains. The Decedent's wishes should be respected and honored and further delay is not warranted. **Respondent has the right to handle the funeral arrangements for the Decedent, Julien Jimeto Ronan.**

Thus, this matter is resolved in accordance with this Amended Memorandum Opinion and Amended Order of even date. Accordingly, it is hereby

**ORDERED** that copies of this Amended Memorandum Opinion and Amended Order shall be directed to Joseph B. Caines, Esq. and the Information Technology Division of the Superior Court of the Virgin Islands and a copy shall be served upon Monica Abigail Clarke.